FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

*10* DEC 2 2010

at ____ o'clock and ____ min. ____ M.
SUE BEITIA, CLERK

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division
ELINOR COLBOURN
Senior Trial Attorney
TODD S. MIKOLOP
Trial Attorney
Environmental Crimes Section
P.O. Box 23985
L'Enfant Plaza Station
Washington, D.C. 20026-3985
202-305-0205

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 10-00296-JMS |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OF PLEA |
| | ) | AGREEMENT |
| vs. | ) | |
| | ) | Date: December 2, 2010 |
| KAUAI ISLAND UTILITY CO-OP | ) | Time: 9:30 a.m. |
| | ) | Hon. J. Michael Seabright |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OF PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the UNITED

STATES OF AMERICA, by its attorney and the Assistant Attorney General for Environment

and Natural Resources Division, and Defendant KAUAI ISLAND UTILITY CO-OP, now known

as Kauai Island Utility Cooperative ("KIUC" or "Defendant") and its attorneys have agreed upon

the following:

1.    Defendant agrees to enter a plea of guilty to Count One, a violation of the Endangered Species Act, Title 16, United States Code, Sections 1538 and 1540, and to Count Sixteen, a violation of the Migratory Bird Treaty Act, Title 16, United States Code Sections 703 and 707, as charged in the above-captioned Indictment.

2.    Defendant has read the charges against it contained in the Indictment, and those charges have been fully explained to it by its attorney.

3.    Defendant fully understands the nature and elements of the crimes with which it has been charged.

4.    Defendant will enter a voluntary plea of guilty to Counts One and Sixteen of the Indictment, charging it with violating the Endangered Species Act, Title 16 United States Code, Sections 1538 and 1540 (Count One), and the Migratory Bird Treaty Act, Title 16, United States Code, Sections 703 and 707 (Count Sixteen).

5.    Defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

6.    Defendant enters this plea because it is in fact guilty of violating the Endangered Species Act and the Migratory Bird Treaty Act as charged in Counts One and Sixteen, and agrees that its plea is voluntary and not the result of force or threats.

7.    Defendant understands that the penalties for Count One, to which it is pleading guilty, include up to 5 years probation and a fine of $25,000.  Defendant further understands that the penalties for Count Sixteen, to which it is pleading guilty, includes up to 5 years probation and a fine of up to $15,000.  In addition, the Court must impose a $50 special assessment as to each count to which Defendant is pleading guilty.  Defendant agrees to pay $50

for the counts to which it is pleading guilty to the District Court's Clerk's Office, a total of $100, to be credited to said special assessments, before the commencement of any portion of sentencing. Defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the prosecution will allow, though not require, the prosecution to withdraw from this agreement at its option.

8.      Defendant admits the following facts and agrees that they are not a detailed recitation of all facts involved in this matter, but merely an outline of what happened in relation to the charge to which Defendant is pleading guilty:

a.      The Newell's Townsend's shearwater (*Puffinus auricularis newelli*) (hereinafter "Newell's shearwater") is a seabird native only to the Hawaiian Islands. The Newell's shearwater is a threatened species protected under the Endangered Species Act, Title 50, Code of Federal Regulations, Section 17.11. The Newell's shearwater is a migratory bird protected under the Migratory Bird Treaty Act, Title 50, Code of Federal Regulations, Section 10.13.

b.      Most of the world's Newell's shearwaters nest in burrows on inland mountains on the island of Kauai. Young Newell's shearwaters leave these inland mountain nests and make their first flight to the sea in September through December each year. Adult Newell's shearwaters fly between the ocean and these nesting areas from spring through fall of each year.

c.      No later than November 1, 2002, Defendant knew that power lines owned, operated and maintained by Defendant were located in such a way that Newell's Shearwaters could collide with power lines during their flights between the mountain burrows

and the sea. Defendant further knew that any such collision could kill, wound, and/or otherwise harm or harass Newell's shearwaters, including injuring it and/or causing it to fall to the ground where it may be killed.

d.      No later than November 1, 2002, Defendant knew that young Newell's shearwaters are attracted to bright lights, and that such attraction often causes them to circle the lights, including but not limited to lights operated by the Defendant. This attraction thus may cause the birds to collide into power lines or other obstacles as they circle, or to fall to the ground from exhaustion. Defendant also was aware that modifying or shielding lights so that they shine only downward significantly reduces this attraction and related takings. Defendant shielded all street lights under its control by June 2003 pursuant to an agreement with the U.S. Fish and Wildlife Service requiring it to do so, but did not shield lights at its Port Allen facility at that time.

e.      Between approximately June 2005 and the present, at least fourteen Newell's shearwaters were found downed near power lines owned, operated and maintained by Defendant near Kealia Beach and Donkey Beach. Subsequent necropsies on some of these birds concluded the birds died due to blunt force trauma consistent with a collision with a power line or other solid object.

f.      Between approximately June 2005 and the present, at least four Newell's shearwaters were found downed near power lines owned, operated and maintained by Defendant in the Wailua River Valley.

g.      Between approximately June 2005 and the present, at least ten additional Newell's shearwaters were found downed near power lines owned, operated and

maintained by Defendant elsewhere on Kauai, as referenced in the Indictment.  Subsequent

necropsies on some of these birds concluded the birds died due to blunt force trauma consistent

with a collision with a power line or other solid object.  In at least one instance an eyewitness

observed a Newell's Shearwater strike a power line near Hanapepe Stadium.  In another instance

before 2005, other eyewitnesses observed a Newell's Shearwater strike a power line in the town

of Kilauea.

         h.      Between approximately October 17, 2006, and October 25, 2006,

nine Newell's shearwaters were found on the ground at or near the Defendant's Port Allen

facility.  Although Defendant modified its lights in 2007, between approximately October 29,

2008, and October 29, 2009, at least an additional six Newell's shearwaters were found on the

ground at or near the Defendant's Port Allen facility.

         i.      At no time relevant to the Indictment did the Defendant have a

permit authorizing any of the takings described above.

        9.      Pursuant to CrimLR32.1(a) of the Local Rules of the United States District

Court for the District of Hawaii, the parties agree that the charges to which the Defendant is

pleading guilty adequately reflect the seriousness of the actual offense behavior and that

accepting this Agreement, including the stipulated conditions of probation, will not undermine

the statutory purposes of sentencing.  The Agreement to plead guilty to the violation of the

Endangered Species Act and the violation of the Migratory Bird Treaty Act reflects the essence

of the Defendant's conduct.

        10.      On the day of sentencing, as community service aimed at the harm caused

by the takings that have occurred in the past five years and in recognition of the cultural and

ecological importance of these seabirds to Hawaiians and Hawaii, but recognizing that Defendant has voluntarily funded and otherwise supported the island-wide Save Our Shearwaters program annually since 2003, including an annual comprehensive public awareness campaign on Kauai to increase the effectiveness of the program, Defendant shall donate $225,000 to the National Fish and Wildlife Foundation (the "Foundation") (an entity created by statute for the purpose of, among other things, receiving and managing such funds) to be placed in an account for use to benefit and increase the populations of Newell's shearwaters on the Island of Kauai.  None of these funds may be used to fund any of the mitigation measures described in Defendant's proposed Habitat Conservation Plan, a Notice of Availability for which was published in the Federal Register on October 13, 2010 (75 Fed. Reg. 62850).  Defendant acknowledges that failure to make such full payment in a form and manner acceptable to the prosecution will allow, though not require, the prosecution to withdraw from this agreement at its option.  Defendant and the United States will make good faith efforts to have the Foundation provide to the Court, with copies to the Parties, an annual report of contributions to and expenditures from this account during the period of probation.

    11.    Pursuant to CrimLR32.1(b) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of Defendant in connection with this matter:

    a.    The parties stipulate to the facts as outlined in Paragraph 8, above.

    b.    Offense level stipulations – none.

c.      Sentencing stipulations – the U.S. Sentencing Guidelines are not

applicable; the parties agree to a sentence of a total fine of $40,000 ($25,000 for Count One,

$15,000 for Count Sixteen), to be paid within the first six months of the period of probation, and

18 months unsupervised probation with the following special conditions of probation:

i.      Pursuant to the mandatory condition of probation set forth

at 18 U.S.C. § 3563(a)(1) (defendant shall not commit another Federal, State or local crime

during the term of probation), to minimize further violations during the period of probation,

KIUC agrees to undertake the following corrective measures:

(1)      Initiate line reconfiguration work at the following

locations as described in Attachment A (proposed Habitat Conservation Plan), Table 5.2: (a)

Kealia Kawaihau to Mailihuna (segment D1), (b) Kealia Mailihuna to Kaao (segment D2), and

(c) Hanapepe Town Bridge (segment H7).  With respect to the Kealia projects (segments D1 and

D2), "initiate" shall mean initial submission of bridge design and calculation plans to the Hawaii

Department of Transportation no later than 2 months after sentencing, and initial submission of a

Public Utilities Commission (PUC) application no later than 3 months after sentencing.  With

respect to the Hanapepe Town Bridge project (segment H7), "initiate" shall mean submission of

bridge design and calculation plans to the Hawaii Department of Transportation no later than 5

months after sentencing.  Following initiation, and in consideration of these projects' inclusion in

KIUC's pending HCP, KIUC commits to work in good faith toward completion of the work on

these segments as follows: (1) segment D1 by the end of 2011, (2) segment D2 prior to the end of

the period of probation, and (3) H7 by the end of 2011.  The United States agrees that KIUC's

commitment to initiation and completion of these projects is intended to help minimize takings

pursuant to the provisions of the draft HCP.  The United States agrees that KIUC's commitment to initiation and completion of these projects does not and shall not affect the approval of KIUC's pending short term HCP, and shall not be considered a factor in deciding whether the pending short term HCP meets statutory or regulatory requirements, provided that any permit issued pursuant to the pending short term HCP is issued within the first year of the period of probation.  If good faith efforts by Defendant to comply with this probationary condition are unavailing due to the action or inaction of third parties, the United States shall not consider Defendant in violation of probation.

(2)     Within 6 months of probation being imposed, plant along the Highway 56 Kaao Road to Highway 56 - mile 11 near Kealia Kai (segment D3 in Table 5.2 of Attachment A) fast-growing trees of species either (a) native to Kauai or (b) already introduced onto the island and assessed as "low risk" according to the Hawaii-Pacific weed risk assessment.  The planting shall be done in a manner designed so that the trees will grow to shield the utility lines from collisions with birds.  If efforts to comply with this probationary condition are unavailing, Defendant agrees to submit to the Probation Office a report documenting Defendant's efforts to undertake such planting and the reasons why it could not do so.

(3)  Before the end of probation, initiate line reconfiguration work at the following locations as described in Attachment A (proposed Habitat Conservation Plan), Table 5.2: (a) Kapaa Taco Bell to Kapaa substation (segment C1) and (b) Kapaa Bridge (segment C2).  "Initiate" shall mean submission of engineering plans to the Hawaii Department of Transportation. The United States agrees that KIUC's commitment to initiation and completion of these projects is intended to help minimize takings pursuant to the provisions

of the draft HCP.  The United States agrees that KIUC's commitment to initiation and

completion of these projects does not and shall not affect the approval of KIUC's pending short

term HCP, and shall not be considered a factor in deciding whether the pending short term HCP

meets statutory or regulatory requirements, provided that any permit issued pursuant to the

pending short term HCP is issued within the first year of the period of probation.  If good faith

efforts by Defendant to comply with this probationary condition are unavailing due to the action

or inaction of third parties despite the best efforts of Defendant, the United States shall not

consider Defendant in violation of probation.

        ii.      Pursuant to 18 U.S.C. § 3563(a)(1) and (b)(22), KIUC

agrees to initiate by no later than April 1, 2011, monitoring of two stretches of power lines

located inland using heat-sensing digital video cameras.  Monitoring shall be continuous from ½

hour after sunset until at least 3 hours after sunset, and again for at least 2 ½ hours prior to

sunrise each day between April 1 and December 15, 2011.  The two stretches of power line to be

so monitored are: **[two 1/4 mile sections to be determined by U.S. Fish and Wildlife Service**

**no later than December 1, 2010]**.  The locations of all cameras used to monitor both stretches

are to be provided to the U.S. Fish and Wildlife Service Office of Law Enforcement prior to the

initiation of monitoring.  Defendant will provide a copy of the recordings to the U.S. Fish and

Wildlife Office of Law Enforcement on a monthly basis or upon 24 hours notice, and Defendant

will maintain the camera recordings for at least one year.  Defendant's investment in this

monitoring shall be capped at $75,000 for cameras and associated recording and computer

equipment, and not to include in kind costs of installation and operation.  If the expenditures

under this provision total less than $75,000, all unused funds up to a maximum of $25,000 will

be donated to the National Fish and Wildlife Foundation as described in paragraph 10 above.

     iii.  KIUC agrees to establish an escrow account within fourteen days after sentencing, in the amount of $50,000 to be used in the event that, during the period of probation, Defendant's power lines or lights cause "takes" of protected seabirds (migratory, endangered or threatened) involving such birds coming to the ground, subject to the limitations and procedures below

     (1)  If the United States believes that a preponderance of evidence shows a "take" of a protected seabird by Defendant's power lines or lights involving such bird coming to the ground, and the power line or light at issue have not already been modified pursuant to agreement with or at the direction of a United States agency, and the protected seabird in question is not successfully rehabilitated pursuant to the established protocols and through the Save Our Shearwaters program, for each such take the United States shall present such evidence to Defendant and make a written request that $10,000 be transferred from the escrow account to an account established at the National Fish and Wildlife Foundation for use in mitigating takings of seabirds on Kauai.  Defendant shall, within 14 days of receiving the request, either direct the immediate transfer of the $10,000 to the account at the National Fish and Wildlife Foundation or dispute its liability for the alleged taking.  This amount per bird is stipulated for the purposes of this plea agreement only, in recognition of potential fine amounts of $15,000 and/or $25,000 per violation, and does not reflect any agreement by any party as to the valuation of such birds for any other purpose.  In the event of a dispute, the United States may bring the dispute to the Court for resolution.

     (2)  KIUC agrees to maintain at least $30,000 in the

escrow account at all times, until such time as $170,000 in total is withdrawn from the escrow

account.  Thereafter, if the remaining $30,000 is exhausted (and a total of $200,000 withdrawn

from the account as described above), KIUC will not be required to replenish the account or

otherwise make any further transfers to the National Fish and Wildlife Foundation Account

pursuant to this provision.  Any funds remaining in the escrow account at the end of the period of

probation shall be promptly returned to Defendant.

      (3)    If KIUC believes that a preponderance of evidence

shows a "take" of a protected seabird not caused by KIUC involving the bird coming to the

ground, during the period of probation, and the protected seabird in question is successfully

rehabilitated pursuant to the established protocols of and through the Save Our Shearwaters

program using funds provided by KIUC, for each such take KIUC shall present such evidence to

the United States and make a written request that $1,000 be offset against any funds identified to

be transferred under paragraph (1) above from the escrow account to an account established at

the National Fish and Wildlife Foundation for use in mitigating takings of seabirds on Kauai.

This offset amount is agreed upon for the purposes of this plea agreement only and does not

reflect any agreement by any party as to the valuation of such rehabilitated birds for any other

purpose.  The United States shall, within 14 days of receiving the request, either direct the

immediate offset of the $1,000 against an amount to be transferred, or dispute KIUC's claim that

the taking was not caused by KIUC.  In the event of a dispute, KIUC may bring the dispute to the

Court for resolution at any time prior to a transfer pursuant to paragraph (1) above.  In no event

shall offsets totaling more than $100,000 be afforded to KIUC.   In no event shall this provision

be interpreted to require any funds to be paid out to KIUC.

(4)  If during the term of probation KIUC obtains an Incidental Take Permit and begins the mitigation projects described in that Incidental Take Permit, this escrow provision shall no longer apply in its entirety.

iv.    KIUC agrees, during the period of probation, to

(1) continue its efforts, in good faith, to obtain a short term incidental take permit pursuant to the Endangered Species Act;

(2) continue its efforts, in good faith, to obtain a long term incidental take permit pursuant to the Endangered Species Act;

(3)  whenever it otherwise plans to alter (including move, replace, modify or reconfigure, but not including solely repair or maintain) existing lines or poles, to review the impacts of those lines, poles and affiliated lights, and implement best design practices for the alteration to further minimize, if possible, the impacts of those structures on protected seabirds.  Such consideration and planning shall be reflected in the required compliance reports under subparagraph v. below.

v.    Within six months after sentencing, and at the end of each subsequent period of six months during the period of probation, KIUC agrees to submit to the Court, with a copy to counsel for the United States, a report on its ongoing compliance with the above conditions of probation.

d.    The parties stipulate that KIUC may seek early termination of the period of unsupervised probation after twelve months, provided that KIUC obtains an Incidental Take Permit before the term of probation expires, and is in compliance with all conditions of probation then applicable.

12.     If the Court accepts this plea agreement, including the stipulations contained therein regarding sentencing, the Environmental Crimes Section of the U.S. Department of Justice will decline to prosecute the Defendant for any additional criminal violations up until the date of execution of this plea agreement, related to the Defendant's involvement in takings of migratory, threatened or endangered birds related to power lines, lights, or any other facilities owned, operated and/or maintained by Defendant.

13.     If, in the sole judgment of the United States, the Defendant has complied with the terms of this plea agreement, has provided timely (within 48 hours) notification to the USFWS of any known takings of migratory and/or ESA-protected birds, acts in good faith and in consultation with the USFWS to correct or minimize those conditions identified as resulting in any such takings, and otherwise complies with its conditions of probation, the Environmental Crimes Section would, for the period of probation (up to 18 months, or less if terminated early) or until the island-wide HCP is completed, whichever comes first, exercise its discretionary authority not to prosecute the Defendant for any taking of birds in violation of the MBTA or ESA that occurs during the period of its probation related to power lines, lights, or any other facilities owned, operated and/or maintained by Defendant.

14.     The parties agree that notwithstanding the parties' Agreement herein, the Court is not bound by any stipulation entered into by the parties but may, with the aid of the presentence report, if any, determine the facts relevant to sentencing.

15.     Pursuant to Section 6B1.4 of the Sentencing Guidelines, the parties identify the following facts that are in dispute for the purpose of sentencing of Defendant in connection with this matter:  None.

16.     Defendant is aware that it has the right to appeal the sentence imposed under Title 18, United States Code, Section 3742(a).  Defendant knowingly waives the right to appeal any sentence within the maximum provided in the statute(s) of conviction or the manner in which that sentence was determined on any of the grounds set forth in Section 3742, or on any ground whatever, in exchange for the concessions made by the government in this plea agreement.

a.     Defendant also waives its right to challenge its sentence or the manner in which it was determined in any collateral attack, except that it may make such a challenge based on a claim of ineffective assistance of counsel.

b.     The government retains its right to appeal the sentence and the manner in which it was determined on any of the grounds stated in Title 18, United States Code, Section 3742(b).  In the event of such an appeal, defendant may defend the sentence on any grounds without limitation.

17.     Defendant understands that the District Court in imposing sentence may consider the provisions of the Sentencing Guidelines.  Defendant agrees that there is no promise or guarantee of the applicability or nonapplicability of any Guideline or any portion thereof, notwithstanding any representations or predictions from any source.

18.     The parties agree that a presentence report is not necessary, and will inform the Court of this agreement.

19.     Defendant understands that this Agreement will not be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report, unless the Court decides that a presentence report is unnecessary as recommended by the

parties.  Defendant understands that the Court will not accept an agreement unless the Court

determines that the charges adequately reflect the seriousness of the actual offense behavior and

accepting the agreement will not undermine the statutory purposes of sentencing.

20.     Defendant understands that by pleading guilty it surrenders certain rights,

including the following:

a.      If Defendant persisted in a plea of not guilty to the charges against

it, it would have the right to a public and speedy trial.  The government maintains that the

Defendant does not have a right to a jury trial for the charges set forth in the Indictment.

b.      If the trial were a jury trial, the jury would be composed of twelve

laypersons selected at random.  Defendant and its attorney would have a say in who the jurors

would be by removing prospective jurors for cause where actual bias or other disqualification is

shown, or without cause by exercising peremptory challenges.  The jury would have to agree

unanimously before it could return a verdict of either guilty or not guilty.  The jury would be

instructed that Defendant is presumed innocent, and that it could not convict the Defendant

unless, after hearing all the evidence, it was persuaded of the Defendant's guilt beyond a

reasonable doubt.

c.      If the trial is held by a judge without a jury, the judge would find

the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of

Defendant's guilt beyond a reasonable doubt.

d.      At a trial, whether by a judge or a jury, the prosecution would be

required to present its witnesses and other evidence against the Defendant.  Defendant would be

able to confront those prosecution witnesses and its attorney would be able to cross-examine

them.  In turn, Defendant could present witnesses and other evidence on its own behalf.  If the witnesses for Defendant would not appear voluntarily, it could require their attendance through the subpoena power of the Court.

21.     Defendant understands that by pleading guilty, it is waiving all of the rights set forth in the preceding paragraph.  Defendant's attorney has explained those rights to it, and the consequences of the waiver of those rights.

22.     Defendant and its attorney acknowledge that no threats, promises, or representations have been made, nor agreement reached, other than those set forth in this Agreement, to induce Defendant to plead guilty.

23.     The parties understand that the Court's rejection of any stipulation between the parties does not constitute a refusal to accept this Agreement since the Court is expressly not bound by stipulations between the parties.

24.     Defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of Defendant's conduct regarding the charges against it, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

25.     Defendant agrees that it will fully cooperate with the United States.

DATED: November ___, 2010, at Honolulu, Hawaii,

AGREED:


IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Res. Div.

KAUAI ISLAND UTILITY CO-OP
through
DAVID BISSELL

United States Department of Justice

Chief Financial Officer and Acting
Chief Executive Officer

ELINOR COLBOURN
Senior Trial Attorney
TODD S. MIKOLOP
Trial Attorney
Environmental Crimes Section
Environment and Natural Res. Div.
United States Department of Justice

WILLIAM M. GOODMAN
DAVID W. PROUDFOOT
JASON S. TAKENOUCHI
Attorneys for Defendant
Kauai Island Utility Cooperative